IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | NO. 10-CR-30106-WDS |
| ) | |
| THOMAS CURETON, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

**STIEHL, District Judge:**

Before the Court is defendant's motion to suppress, on which the Court held an evidentiary hearing and took the matter under advisement. The defendant seeks to suppress evidence seized as part of a search of his apartment laundry room on January 8, 2010. The government asserts that the defendant does not have standing to challenge the search of the laundry room because it is a common area shared by several apartments.

The evidentiary hearing revealed the following:

Sergeant William Kenny, St. Clair County Sheriff's Department, testified that a confidential source had advised them that the defendant was selling crack cocaine, and that he had acquired crack from the defendant on at least three occasions from his residence on West H Street in Belleville, Illinois. The apartment complex is designed with all units having exterior doors, and a laundry room area which is accessed by the tenants through an exterior door as well. The confidential source also identified an apartment on North 2nd Street as a place where the defendant sold crack cocaine.

A warrant was obtained for the apartment on West High Street and a search was conducted on January 7, 2010. The laundry room was not the subject of the search warrant.

Phillip Koch, an Investigator with the St. Clair County Sheriff's Department, testified that he interviewed William Bosley who lived at the North 2nd Street apartment, and also stated that he had purchased crack cocaine from the defendant.  Bosley identified the laundry room as the place where the defendant stashed his crack cocaine, and his description included the ceiling.  Although Bosley had not said that he had been to the laundry room, his description of the room led Koch to believe that he had been there and knew what was stashed there.

Within a short time of learning of the laundry room from Bosely, Investigator Koch and Sergeant Thomas Trice went to the apartment and entered an unlocked laundry room door and found a plastic bag in the drop ceiling.  The search revealed various items, including, baggies, a razor with cocaine residue, 2 loaded guns, an electronic scale, and ammunition.  Koch testified that they went there after learning of the defendant's alleged stash place because they were concerned that someone could get to the items that were being secreted there, given the common nature of the laundry room.

Agent Hill, a Task Force Detective with the Drug Enforcement Administration, testified that at the defendant's arraignment, the defendant blurted out in the Courtroom, that "everyone" had access to the laundry room.

The government also presented the testimony of Christine Rejniak, who is the building manager for the apartment in question. She testified that there is a provision in the lease, which the defendant and his wife signed, that the tenants cannot leave personal property in the common areas, and that any personal property would be thrown away.  She identified the laundry room as part of the "common area," used by the tenants, and that most tenants kept the room locked.

## DISCUSSION

It is well settled that to bring a motion to suppress evidence, a defendant must have standing to challenge the search and seizure of evidence. "The Supreme Court has consistently held that 'Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted.'" *United States v. Carlisle*, 614 F.3d 750, 756 (7th Cir. 2010) (*quoting Rakas v. Illinois*, 439 U.S. 128, 134 (1978)). The Court in *Carlisle* established the following test for standing: "When considering whether an individual has a legitimate expectation of privacy, a court must consider: (1) whether the individual, by his conduct, has exhibited an actual (subjective) expectation of privacy; and (2) whether the individual's subjective expectation of privacy is one that society is prepared to recognize as reasonable." *Id.* at 756-57 (citations omitted). As in *Carlisle*, in this case it is the first prong, the expectation of privacy, which is at issue. In *United States v. Henderson*, 536 F.3d 776, 780 (7th Cir. 2008), the court held that with respect to common areas, " a tenant of shared premises assumes the risk that cotenants may allow common areas to be searched by the police." *Id.* (*citing Georgia v. Randolph*, 547 U.S. 103, (2006)). The defendant must establish both a subjective and objective expectation of privacy and it must be based on one "that society is prepared to recognize as reasonable." *United States v. Villegas*, 495 F.3d 761, 767 (7th Cir. 2007) (*quoting United States v. Yang*, 478 F.3d 832, 835 (7th Cir. 2007)). Further,

> In determining whether a defendant held a subjective expectation of privacy, we look at the defendant's efforts to conceal and keep private that which was the subject of the search. *Id.* To say that society is prepared to recognize an expectation of privacy as reasonable "recognizes the everyday expectations of privacy that we all share." *Minnesota v. Olson,* 495 U.S. 91, 98 (1990). Thus, our inquiry into whether a defendant's expectation of privacy was reasonable is necessarily fact dependent, *see United States v. Smith,* 978 F.2d 171, 180 (5th Cir.1992), and "whether a legitimate expectation of privacy exists in a particular place or thing" must be determined on a case-by-case basis, *United States v. Waller,* 426 F.3d 838, 844 (6th Cir.2005).

3

*Villegas*, 495 F.3d at 767.  In this case, the common area was accessible to all of the apartment units.  Although it was intended to be locked (and had a sign posted indicating that it was to be kept locked) the Court finds persuasive the testimony of the officers that it was not locked on January 8th when they entered the building. The fact that any tenant could use the laundry room, and that a ceiling tile is not in any manner secure, eviscerates defendant's claim of privacy in the area.  Simply put, he did not have any expectation of privacy in this area.  He did not monitor the area, it was left unlocked, he and the other tenants had unlimited access to the area. These facts do not amount to a situation in which there would be any expectation of privacy, much less a legitimate, societal expectation of privacy.  (*See, United States v. Espinoza*, 256 F.3d 718, 723(7th Cir. 2001) (tenants in a multi-family dwelling do not have a reasonable expectation of privacy in building common areas).

Therefore, the Court **FINDS** that the defendant did not have standing to challenge the search of the common area laundry room, and his motion to suppress must fail on this ground alone. Of course, in this case, the officers entered without a warrant, or permission from another tenant, but the fact that the defendant lacks a reasonable expectation of privacy means that he also has no standing to challenge the manner in which the officers entered the building. The Court rejects defendant's position that a common area which is usually accessed by a key, but was left open, creates an expectation of privacy.  Although it may have been intended to exclude the general public, it was not kept in a manner that would keep the public, or in this case, the police out.  There is no question that the officers merely opened the unlocked door to a common area. This is little different than opening a doorway to a building which contains interior doors that are locked and private. The common area is open, therefore, there is no expectation of

privacy.[1]

## CONCLUSION

Accordingly, the Court **FINDS** that the defendant did not have a reasonable expectation of privacy to the common area and the motion to suppress is **DENIED** on all grounds raised for lack of standing.

**IT IS SO ORDERED.**

**DATE:    16 November, 2010**

　　　　　　　　　　　　　　　　　　　　  **s/ WILLIAM D. STIEHL**
　　　　　　　　　　　　　　　　　　　　　　　**DISTRICT JUDGE**

---

[1] Notably, the defendant acknowledged this situation at his arraignment when he blurted out that "everyone" had access to that laundry room (thereby plausibly denying that the items seized were "his" items).  "Everyone" means just that – everyone, the public, the police, other tenants. The defendant had *no* privacy expectation in this common area, as his own words reflected.