IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 10-cr-30106-DWD |
| ) | |
| THOMAS CURETON, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

On November 13, 2015, Defendant Thomas Cureton was sentenced to 444-months imprisonment (Doc. 244), to be followed by twelve years of supervised release, after he was found guilty of offenses for felon in possession of a firearm and distribution of cocaine base near a school in violation of 18 U.S.C. § 922(g)(1) and 21 U.S.C. § 841(a)(1), (b)(1)(C), and § 860 (Doc. 247). Cureton's projected release date is February 5, 2042.[1] Now before the Court is Defendant's motion for compassionate release (Doc. 271). Cureton seeks compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), asking this Court to reduce his sentence to time served (Doc. 271). The Government opposes the motion (Doc. 274), and Cureton filed a reply (Doc. 277). For the following reasons, the motion will be denied.

---

[1] *See* https://www.bop.gov/inmateloc (last visited March 30, 2022). 84 months of his sentence in this matter are to run consecutive to the sentence imposed in *United States of America v. Thomas Cureton*, No. 10-30200-DRH, at Doc. 201 (Sentencing Cureton to 444 months imprisonment after he was found guilty of interstate communication of ransom request, possession of a firearm in furtherance of a crime of violence, and attempted extortion).

1

## The First Step Act of 2018

Compassionate release long has been an exception to the general rule that sentences imposed in criminal cases are final and may not be modified. Prior to the passage of the First Step Act, a defendant seeking compassionate release first had to request it through the Director of the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A). The First Step Act of 2018 modified that provision to allow incarcerated defendants to seek compassionate release from a court on their own motion, provided that they exhaust administrative rights prior to seeking relief in the courts. The Seventh Circuit has held that failure to satisfy the exhaustion requirements of 18 U.S.C. § 3582(c)(1)(A) is an affirmative defense that must be raised by the Government or else it is waived. *See United States v. Sanford*, 986 F.3d 779, 781 (7th Cir. 2021); *United States v. Gunn*, 980 F.3d 1178, 1179 (7th Cir. 2020).

Here, the Government challenges Cureton's exhaustion efforts, in part. In his motion, Cureton requests compassionate release for multiple grounds including that he needs to be a caretaker for his elderly mother and stepfather, that he has been rehabilitated, and certain aspects of his sentence would no longer be valid in light of the Supreme Court's decisions in *United States v. Davis*, 139 S. Ct. 2319 (2019) and *Rehaif v. United States*, 139 S. Ct. 2191 (2019), and because the definition of "controlled substances" in the state offense used to enhance his sentence is broader than the federal definition of controlled substance (Doc. 271). The Government concedes, that at best, the documents Cureton submitted to the warden only exhausted his justifications based on his mother's death and his post-sentencing rehabilitation (Doc. 274, p. 9), but that Cureton failed to

2

submit the remaining grounds (i.e., his need to be a caretaker for his stepfather or his legal attacks on his sentence) to the BOP before filing his motion.

The exhaustion requirement is a "mandatory claim-processing rule." If properly invoked, dismissal is mandatory, and a district court has no discretion to grant compassionate release. *See Sanford*, 986 F.3d at 782. To properly exhaust, Cureton must "present the same or similar ground for compassionate release in a request to the Bureau [of Prisons] as in a motion to the court." *United States v. Williams*, 987 F.3d 700, 703 (7th Cir. 2021). On February 24, 2021, Cureton submitted a document entitled "Reduction in Sentence Application" to his warden asking for a sentence reduction due to the death of his mother (Doc. 274-1). The BOP denied Cureton's request for compassionate release in an undated letter (Doc. 274-2). Cureton filed his motion for compassionate release on March 2, 2021 (Doc. 271).

Cureton also submitted a copy of an email correspondence directed to Warden Williams and dated December 8, 2022, in which he asked for consideration of compassionate release because of his rehabilitation efforts (Doc. 271, p. 16).[2] In response, the associate warden told Cureton to request a compassionate release application through his unit team (*Id.*). With his reply, Cureton submitted a document from "CSW Huston" indicating that Huston submitted an application to the institution's RIS Coordinator on December 14, 2020, and again on December 29, 2020 (Doc. 277, p. 10). Cureton represents that he did not receive a response to this request (Doc. 271).

---

[2] The Government does not concede that this email correspondence was a proper application submitted to Cureton's warden so to exhaust this ground.

3

The Court is unable to determine the date of denial of Cureton's February 2021 request and the Government does not address Cureton's alleged December 2020 application. Further, Cureton's presentation of grounds related to his mother's death could be construed as similar enough to exhaust his related claim concerning his stepfather. *See Williams*, 987 F.3d at 703 (to properly exhaust, defendants must "present the same or similar ground for compassionate release in a request to the Bureau [of Prisons] as in a motion to the court."). It is the Government's burden to support its affirmative defense here. *See United States v. Streeter*, No. 2:16 CR 167, 2021 WL 1291767, at *2 (N.D. Ind. Apr. 7, 2021) (citing *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

Based on the record currently before the Court, the Court is unable to ascertain whether Cureton fully exhausted all of his claims before seeking compassionate release from this Court. However, because the Government concedes that Cureton may have exhausted his claims related to the death of his mother, the Court will not conduct further inquiry into Cureton's exhaustion efforts and will proceed to the merits of Cureton's request. As further detailed below, none of the grounds raised by Cureton's Motion support compassionate release, and even if they did, the sentencing factors in 18 U.S.C. § 3553(a) far outweigh any considerations of compassionate release here. The Motion therefore fails on the merits.

## Discussion

After a compassionate release motion is filed, the Court may reduce the term of imprisonment upon a finding that "extraordinary and compelling reasons warrant such a reduction … and that such a reduction is consistent with applicable policy statements

4

issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). If such reasons exist, the Court must consider the sentencing factors in 18 U.S.C. § 3553(a). The defendant bears the burden of showing that he is entitled to relief under the First Step Act. *See United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021). Where a motion is brought by the defendant, the Court may consider the Sentencing Commission's policy statements but is not bound by them. *Gunn*, 980 F.3d at 1180. This "working definition of 'extraordinary and compelling reasons'" includes circumstances surrounding the medical condition of the defendant, the age of the defendant, and family circumstances. *Id.* (citing U.S.S.G. 1B1.13 and its Application Notes). Of course, the Court is not constrained by the policy statement and Application Notes in U.S.S.G. 1B1.13; the Court merely uses the working definition to assist in exercising its discretion. *See Gunn*, 980 F.3d at 1180.

Cureton argues that extraordinary and compelling reasons exist for his release due to his ailing and disabled step-father who is unable to care for himself (Doc. 271, pp. 2-3).[3] Beyond this justification for considering his compassionate release motion, Cureton maintains that he has rehabilitated himself by attending educational classes, participating in "the Friend of a Friend mentoring program" and "suicide companion program", attending religious services, and working with the "Protect Our Women and Rise" organization to assist in educating "young men and boys on the importance of protecting our women in society." (Doc. 271, pp. 3-4; Doc. 277, p. 9). Finally, Cureton argues that he would have been entitled to a lower sentence today because he did not receive the

---

[3] Cureton originally sought relief to assist his ailing mother as well, however, he represents that while he was putting his motion together, his mother passed away (*See* Doc. 271, p. 12).

5

benefit of the Supreme Court's decisions in *United States v. Davis*, 139 S. Ct. 2319 (2019) and *Rehaif v. United States*, 139 S. Ct. 2191 (2019) (Doc. 271, pp. 4-5).

The Government opposes Cureton's motion, arguing that Cureton failed to establish extraordinary and compelling reasons (Doc. 274). The Government also argues that the factors in § 3553(a) weigh against Cureton's early release. Specifically, the Government points to Cureton's heinous criminal history, violent disciplinary infractions, and the BOP's placement of him at a high risk of recidivism to argue that Cureton remains a danger to the public (*See* Doc. 274).

Cureton does not satisfy any of the factual predicates listed by the Sentencing Commission as constituting "extraordinary and compelling reasons" justifying compassionate release. Specifically, he has not established that he is suffering from a terminal illness or other condition from which he is not expected to recover, he is under 65 years old, and he does not indicate any death or incapacitation in his immediate family. Although Cureton argues that his stepfather is disabled and has several health issues (Doc. 271, pp. 2-3), he does not provide any factual evidence to support this contention. Moreover, he represents that other family members are able to assist with daily chores (*Id.*). Accordingly, Cureton has not shown that an extraordinary and compelling reason exists due to the health of his ailing parents.[4]

---

[4] In his Motion, Cureton makes reference to his ailing mother, stepfather, and father. The Court is unable to determine whether Cureton is referring to his father and stepfather as different individuals. Nevertheless, even assuming Cureton is referring to two different individuals, this does not change the Court's analysis and Cureton has not shown that an extraordinary and compelling reason exists here.

Similarly, Cureton's rehabilitation efforts, singularly, or in combination with his other grounds of relief do not support a finding of extraordinary and compelling reasons. Rehabilitation alone is not an extraordinary and compelling reason warranting relief under § 3582(c)(1)(A). *See* 28 U.S.C. § 995(t) ("Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."). Nor are any of Cureton's other proffered facts an extraordinary and compelling reason, whether considered alone or in combination with his rehabilitation efforts. As for his arguments concerning the validity of his sentence after *Davis* and *Rehaif*, the Court notes the problematic tension between Cureton's compassionate release motion and the relief offered under 28 U.S.C. § 2255. As a general rule, a federal prisoner wishing to collaterally attack his conviction or sentence must do so under § 2255 in the district of conviction." *Chazen v. Marske*, 938 F.3d 851, 856 (7th Cir. 2019); *see also United States v. Thacker*, 4 F.4th 569 (7th Cir. 2021), *cert. denied,* No. 21-877, *Thacker v. United States*, No. 21-877, 2022 WL 827870 (U.S. Mar. 21, 2022) (voicing concerns that the scope of discretion conferred by the First Step Act would allow the compassionate release statute to operate in a way that creates tension with the principal path and conditions Congress established for federal prisoners to challenge their sentences).

Further, Cureton has raised these same arguments attacking his sentence in his motion under 28 U.S.C. § 2255, which is currently pending and under advisement with this Court. *See Cureton v. United States of America*, S.D. Ill Case No. 19-cv-1107. Therefore, even if the Court construed his motion as having been brought under 28 U.S.C. § 2255, *see United States v. Carraway*, 478 F.3d 845, 848 (7th Cir. 2007) (affirming district court's

7

recharacterization of a motion as having been brought under § 2255 because "it is the substance of the petitioner's motion that controls how his request for relief shall be treated"), it would not help Cureton's cause to bypass his already pending § 2255 motion. In sum, Congress chose not to make the First Step Act retroactive, and this Court will not use compassionate release to do what Congress did not.

Nevertheless, even if Cureton's circumstances, rehabilitation, or the aggregate of his circumstances established an extraordinary and compelling reason under 18 U.S.C. § 3582(c)(1)(A), the sentencing factors in 18 U.S.C. § 3553(a) far outweigh any considerations of compassionate release here. *See United States v. Saunders*, 986 F.3d 1076, 1078 (7th Cir. 2021) ("Because of the importance of the § 3553(a) factors, courts are not compelled to release every prisoner with extraordinary and compelling health concerns."). Specifically, the United States has pointed to significant evidence that Cureton poses a danger to other persons. Cureton's criminal history includes heinous charges wherein he threatened to disfigure a teenager's body with a knife and made her call family members for ransom money (Doc. 274; *see also* Doc. 137). In describing Defendant's violent and vicious torture of the teenager, Judge Murphy and Judge Herndon both described Defendant as "a very dangerous man" (*See* Docs. 268, 227, 255). Accordingly, Cureton's sentence remains necessary to reflect the seriousness of his offense, to promote respect for the law, to provide just punishment, to adequately deter Cureton and others from committing further crimes, and to protect the public. Under these facts, compassionate release is inappropriate.

## Conclusion

For the above stated reasons, Defendant's Motion for Compassionate Release (Doc. 271) is **DENIED**.

**SO ORDERED.**

Dated: April 1, 2022

_____
DAVID W. DUGAN
United States District Judge